**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

ROBERT RAYMOND MALOOF

                        Petitioner,                  Case Number: 04-CV-73192-DT
                                                       HONORABLE DENISE PAGE HOOD

v.

ANDREW JACKSON

                        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

I. Introduction

Petitioner Robert Maloof has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court plea-based conviction for possession with intent to deliver more than 225 grams but less than 650 grams of cocaine. For the reasons given below, the habeas petition is denied.

II. Factual and Procedural Background[1]

On July 31, 2001, at around 12:45 a.m., Redford Township Police Officer Brian Jones observed two Chevrolet Luminas pulling out of the Coach and Lantern Motel. Both cars had CB radios and Arizona license plates. In the officer's experience, this motel was well known for narcotics trafficking, drug traffickers travel in tandem and use CB radios or cell phones, and Arizona is a source for narcotics. The cars pulled out of the parking lot

---

[1] The facts are taken from Petitioner's trial (which resulted in a hung jury and mistrial) and evidentiary hearings.

onto Seven Mile.  The one driven by Petitioner failed to signal.  Officer Jones followed the two cars about two miles, to the parking lot of the Econo Lodge, another motel known for drug trafficking, on Telegraph in Detroit.  Officer Jones conducted what he claimed was a traffic stop.  Petitioner exited the vehicle he was driving and said that he and his fiancée were looking for a motel.  Petitioner also informed the officer that he did not have a driver's license.  After Officer Jones did a LIEN check, he arrested Petitioner for driving with a suspended license.  He also issued a traffic citation for failing to signal.  He then conducted what he characterized as an inventory search.  He found bags containing approximately $13,000 on the passenger's side floor of the vehicle Petitioner had been driving.  After a K-9 unit conducted further searching, heroin residue was found in a tin cup in one of the bags with the money.  Petitioner's name was on the vehicle title.

In the second car, driven by the female, Helen Sanderson, two small baggies of marijuana and a piece of paper that appeared to be a record of drug sales were found in a purse on the front seat, and a film canister with some crystal methamphetamine on the back seat.  In the trunk was found a large bag (448.6 grams) of marijuana and six bricks of cocaine.  One brick weighed 1000.8 grams.  It was determined that this car was registered to a Mark Salvador Madrid.

At the Redford Police Station, after his arraignment, the escorting officer said to Petitioner, "You didn't believe that we were actually going to charge you."[2]  Petitioner responded that this case was too big for Redford, that it was federal. The officer offered to have someone from the FBI or DEA speak to him, and Petitioner agreed.  Petitioner spoke

---

[2]6/10/02 Trial Transcript, p 178.

2

to DEA agents twice, on August 1 and 2, 2001.  During these discussions, and after being given Miranda warnings, Petitioner revealed for whom the cocaine was intended, and made a monitored call to him.  This person told Petitioner to call back in an hour, but ultimately Petitioner refused to cooperate further.  Petitioner admitted to the agents that he had transported narcotics to Michigan on numerous occasions.  He also stated that his companion, Ms. Sanderson, was unaware that the drugs were cocaine until halfway through the trip.

Petitioner was charged with possession with intent to deliver 650 or more grams of cocaine, possession with intent to deliver marijuana, and possession of less than 25 grams of heroin, with notice of enhancement as a fourth offender.  He and Ms. Sanderson were tried, together.  The jury hung and a mistrial was declared on June 13, 2002.

On August 27, 2002, the date set for retrial, Petitioner pled guilty to possession with intent to deliver over 225 grams but less than 650 grams of cocaine.  The plea bargain included dismissal of the original charges and withdrawal of the notice of enhancement, and a sentence agreement of 15 to 25 years.[3]  The plea was conditioned on Petitioner preserving his right to appeal the legality of the initial stop and search and seizure of the drugs, and the seizure of a letter he wrote to his son from the jail.

Immediately before being sentenced, on September 19, 2002, Petitioner moved to withdraw his plea, but the motion was denied.  Petitioner was then sentenced to 15 to 25 years, per the plea agreement.  Judge Thomas Brookover presided at the plea and

---

[3] The plea offer also required that both defendants plead that day.  Ms. Sanderson pled to possession with intent to deliver over 50 but less than 225 grams of cocaine, with a sentence agreement of 10 to 20 years.

sentencing.

On September 19, 2003, through his appointed appellate counsel, Petitioner again moved to withdraw his plea.  Judge Michael Hathaway heard and denied the motion.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals, raising the same four issues that he raises in the petition before this Court:

I.      Whether the trial court committed clear error in denying Mr. Maloof's motion to suppress the evidence.

II.     Whether the trial court abused its discretion in failing to grant Mr. Maloof's motions to withdraw his plea before and after the imposition of sentence based upon his innocence, the failure of the trial court to comply with the taking of Mr. Maloof's plea pursuant to MCR 6.302, and ineffective assistance of counsel.

III.    Whether Mr. Maloof was denied his constitutional right to due process of law due to ineffectiveness of trial counsel for failing to move to suppress a letter intercepted by the Wayne County Sheriff's Department at the Wayne County Jail in violation of Mr. Maloof's Constitutional right to be free from illegal searches and seizures.

IV.     Whether Mr. Maloof was denied his constitutional right to due process of law due to the court's imposition of a below guidelines sentence without placing substantial and compelling reasons on the record for doing so.

The Michigan Court of Appeals denied the delayed application for leave to appeal "for lack of merit," by order dated November 21, 2003. *People v Maloof*, No. 25134 (Mich. App. November 21, 2003).  Judge O'Connell would have granted leave.  The Michigan

4

Supreme Court denied leave to appeal by order dated March 30, 2004. *People v Maloof,* 469 Mich. 1028, 679 N.W.2d 62 (2004).

On August 24, 2004, Petitioner filed the pending petition for a writ of habeas corpus.

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. 529 U.S. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. 529 U.S. at 411.

5

Additionally, a federal court presumes the correctness of state court findings of fact for habeas corpus purposes unless the petitioner rebuts the presumption with clear and convincing evidence. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir.2001); 28 U.S.C. § 2254(e)(1).

IV. Analysis

A. The stop and seizure of the drugs.[4]

Petitioner moved before trial to suppress the drugs seized from the two vehicles, and an evidentiary hearing was held. The trial court held that while Officer Jones was incorrect in believing that there was a statute or ordinance requiring that Petitioner signal before exiting private property onto a highway, nonetheless, the officer believed that there was a traffic violation and the stop was not simply done on pretext. Further, once the officer discovered that Petitioner was driving without a license, the arrest and search that followed were legal.

The trial court also rejected the argument that the Redford Township officer was without jurisdiction to stop the vehicles in Detroit. Likewise, the court rejected Petitioner's claim that the Redford Township district court was without authority to bind him over for a crime committed in Detroit, thereby depriving Wayne County Circuit Court of jurisdiction to hear the case.

Petitioner asks this Court to find that the decision of the trial court was contrary to

---

[4] Although Petitioner correctly points out, in his Response to Respondent's Answer, that Respondent did not address Issues I and IV, petitioner is not thereby entitled to a default judgment on these issues, because petitioner has the burden of establishing that his custody is in violation of the U.S. Constitution. *Allen v. Perini*, 26 Ohio Misc. 149, 424 F.2d 134, 138 (6th Cir.1970).

6

or an unreasonable application of federal law.

However, this Court cannot consider Petitioner's claims.  In *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held that federal courts may not consider a habeas petitioner's claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial, if the prisoner had an opportunity for full and fair litigation of that claim in the state courts.  Here, Petitioner's claim was fully and fairly litigated.

To the extent that Petitioner challenges the stop of the vehicles and the seizure of the drugs as a violation of the state statute circumscribing the geographical limits of a police officer's authority, Mich. Comp. Laws § 764.2a, he has not stated a claim that is cognizable in federal habeas corpus proceedings.  Federal habeas corpus relief can be granted only for violation of the Constitution or laws of the United States, and not for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Furthermore, arrests in violation of a statute, and not in violation of the constitution, do not support application of the exclusionary rule and suppression of the evidence. *See United States v. Marls*, 227 F.Supp. 2d 708, 713-714 (E.D. Mich. 2002), and citations therein.

Petitioner further alleges that the police conduct here is so outrageous that due process should bar prosecution, citing *Rochin v. California*, 342 U.S. 165 , 72 S.Ct. 205, 96 L.Ed. 183 (1952).  However, even if this Court were to decide that the officer was acting outside of his jurisdiction without authorization, this Court could in no way find that this would shock the conscience and "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Rochin*, 342 U.S. at 169 (citation omitted).      L i k e w i s e ,

7

Petitioner's claim that the Wayne County Circuit Court was without jurisdiction, because the 17th District Court in Redford had no authority to bindover for a crime committed in Detroit, is a state claim and not cognizable in federal habeas corpus proceedings.  Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary. *Willis v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (citation omitted).

### B. Voluntariness of the Guilty Plea

### 1. The promise of preservation of appeal rights

Petitioner challenges the voluntariness of his plea, claiming that he was led to believe that he had preserved an appeal as of right, as opposed to an appeal by leave, of the two search and seizure issues indicated above.[5]

The Pretrial Settlement Offer and Notice of Acceptance, dated August 27, 2002 and signed by both Petitioner and his trial attorney just before the guilty plea, provided in pertinent part that, "Defendant preserves for appeal stop issue, and interception of letter at jail issue."  At the plea proceeding, the prosecutor characterized this part of the plea bargain as, "[H]e will preserve his appeal issues."[6]  The Court stated that, "[Y]ou would preserve your appeal rights on the issue of the stop and interception of letter at the jail."[7]  As Petitioner correctly states, the trial court did *not* comply with Mich. Ct. Rule 6.302(B)(5),

---

[5] The Michigan Constitution was amended in 1994 to provide that "an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court," Mich. Const., Art.1 , § 20.

[6] 8/27/02 Plea Transcript, p 3.

[7] 8/27/02 Plea Transcript, p 5.

which required the court to inform him that, "any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right." At the sentencing, the court informed Petitioner, "You do have the right to seek an appeal of your convention [sic] and/or sentence."

At the second motion to withdraw guilty plea, Petitioner, through his appointed appellate attorney, argued that he had been promised an appeal as of right of his preserved issues, that by law appeal was in fact by leave only, and that the bargain was thus illusory. Petitioner further argued that his trial attorney was ineffective for misadvising him, and that Judge Brookover had misstated his appellate rights and had failed to give him the requisite advice that appeal was by leave. Attached to Petitioner's pleading was his affidavit, asserting his innocence and stating that he would not have accepted the plea offer had he known his appeal would not be as of right. Appellate counsel informed the court that he had spoken to the attorney who had represented Petitioner at the plea, and the attorney had confirmed that he too thought that Petitioner would have a direct appeal of right of the preserved issues. Appellate counsel asked the court, if it were to rule against Petitioner, that he have additional time to supplement the record with an affidavit from trial counsel. The court responded that it was "assuming that's what he thinks."[8]

Judge Hathaway denied the motion, ruling that the language used at the plea preserved Petitioner's appeal rights, such as they were, so that the promise was accurate, even if Petitioner was misled.

Petitioner, through counsel, applied unsuccessfully for leave to appeal to the

---

[8] 9/19/03 Motion Transcript, p 4.

9

Michigan Court of Appeals.

When a petitioner is convicted as a result of a guilty plea, habeas review is limited to whether the plea was made voluntarily, intelligently, or knowingly. See *United States* v. *Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).   A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. See *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).   A defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea.  *Id.* at 748.   Where a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed. 2d 427 (1971).   The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady, supra* at 749.   The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993).   A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing. See *Park v. Raley*, 506 U.S. 20, 31-34, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

Reviewing all of the relevant circumstances, and giving the requisite deference to the trial court decision, this Court cannot find that the decision was contrary to or an unreasonable application of clearly established Supreme Court precedent, for the following reasons:

Petitioner received a considerable benefit for his plea.   Petitioner avoided the

10

considerable penalties of the original charges: possession with intent to deliver 650 or more grams of cocaine was punishable by life or any term of years not less than twenty years, the delivery of marijuana by up to four years, and the possession of heroin by up to four years.  Sentencing as a fourth offender for possession with intent to deliver, even for  the reduced amount, would have carried a penalty of up to life imprisonment.  The charge to which Petitioner pled carried a maximum of 30 years, but the prosecutor agreed to a 25 year maximum sentence.[9]

Petitioner also received the benefit of being allowed to appeal his two search and seizure issues.  In Michigan, a guilty plea waives raising on appeal any errors which relate solely to the capacity of the state to prove defendant's factual guilt, including the denial of a motion to suppress evidence. *People v. New*, 427 Mich. 482, 485, 398 N.W.2d 358 (1986).  The exception is the "conditional plea," where a defendant, as part of the plea agreement, with the consent of both the judge and the prosecutor, reserves the right to appeal specified pretrial rulings. Mich. Ct. Rule 6.301 (C)(2).  Petitioner was given the benefit of this exception.

Nor did the language used by the trial court and the prosecutor at Petitioner's plea proceeding guarantee Petitioner that he would have an appeal of right.   Rather, it paralleled that used in Mich. Ct. Rule 6.301 (C)(2), governing conditional pleas, except that

---

[9]  Although not mentioned in the record, Petitioner may have also avoided consecutive sentencing.  At the time he was charged and sentenced, Mich. Comp. Laws § 333.7401(3) provided that "A term of imprisonment imposed under subsection (2)(a) or section 7403(2)(a)(i), (ii), (iii), or (iv) shall be imposed to run consecutively with any term of imprisonment imposed for the commission of another felony."

11

Petitioner was  not told that the appeal would be by application for leave to appeal only:

> A defendant may enter a conditional plea of guilty, nolo contendere, guilty but mentally ill, or not guilty by reason of insanity. A conditional plea preserves for appeal a specified pretrial ruling or rulings notwithstanding the plea-based judgment and entitles the defendant to withdraw the plea if a specified pretrial ruling is overturned on appeal. The ruling or rulings as to which the defendant reserves the right to appeal must be specified orally on the record or in a writing made a part of the record.  The appeal is by application for leave to appeal only.

While the trial judge did not give Petitioner the advice required by Mich. Ct. Rule 6.302(B)(5), that "any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right," there is no authority that such advice is required under the federal constitution.  He was advised that he was waiving the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination, as constitutionally required. See *Boykin v. Alabama*, *supra,* 395 U.S. at 242-43.

Even if Petitioner misunderstood his appeal rights, and even if he was misled by his attorney, he nonetheless had "sufficient awareness of the relevant circumstances and likely consequences" of his plea.  *Brady,* 397 U.S. at 748.   "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Id.* at 757.  *Cf. United States v. Ford*, 15 Fed. Appx. 303 (6th Cir. 2001) (unpublished opinion) (unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary); *Clemmons v. United Stated,* 721 F.2d. 235 (8th Cir. 1983) (subjective belief of better prison conditions insufficient to show plea involuntary, even if based on counsel's incorrect advice).

The difference between an appeal of right and an appeal by leave in this case was not significant enough to render the bargain illusory.   This conclusion is supported by the

following case law:

The United States Supreme Court recently held that the due process and equal protection clauses require the appointment of counsel for indigent defendants who plead guilty and who seek review by leave in the Michigan Court of Appeals. *Halbert v. United States*, __U.S.__, 125 S.Ct. 2582 (2005).   The Court had to decide whether to apply its line of cases requiring the appointment of counsel for a first appeal as of right, or that line holding that counsel need not be appointed for discretionary appeals.   The Court held that the first category of cases controlled, even though appeal was by leave.   Critical to its decision was the finding that review of the application for leave to appeal by the Michigan Court of Appeals entailed evaluation of the merits of the applicant's claims.   "[I]n determining how to dispose of an application for leave to appeal, Michigan's intermediate appellate court looks to the merits of the claims made in the application." *Id.* at 2590.   "Of critical importance, the tribunal to which he addresses his application, the Michigan Court of Appeals, unlike the Michigan Supreme Court, sits as an error-correction instance." *Id.* (footnote omitted).

Petitioner's application for leave to appeal to the Michigan Court of Appeals adequately advised that court of his raised four issues: (1) whether the trial court clearly erred in denying the motion to suppress the evidence; (2) whether the trial court abused its discretion with respect to the plea; (3) whether Petitioner was denied his constitutional right to due process of law due to the ineffectiveness of counsel; and (4) whether Petitioner's sentence was proper.   The order of the Michigan Court of Appeals denying Petitioner's application for leave to appeal consists of two sentences.   In an order dated November 21, 2003, the Michigan Court of Appeals wrote, "The Court orders that the

13

delayed application for leave to appeal is DENIED for lack of merit in the grounds presented. Judge O'Connell would GRANT the delayed application for leave to appeal." (Mich. Ct. of App. Case No. 251434, Nov. 21, 2003 Order) (emphasis in original). While this Court is sure the Michigan Court of Appeals evaluated the merits of Petitioner's claims in reaching its decision, it is understandable and reasonable that a defendant believing he had bargained for an appeal *as of right* would expect a discussion of the merits in the appellate order. A decision and order on an application for leave to appeal requires no such discussion.

In *Walker v. McKee*, 366 F.Supp. 2d 544 (E.D. Mich. 2005), the district court agreed with the petitioner that he had been denied the effective assistance of appellate counsel by the attorney's failure to timely file a claim of appeal, causing the petitioner to lose his appeal as of right in the Michigan Court of Appeals. The district court, however, further found that the petitioner could not establish prejudice, since the Michigan Court of Appeals had reviewed his delayed application for leave to appeal, albeit denying the application, as here, "for lack of merit in the grounds presented." The district court refused to presume prejudice because it could not presume that the evaluation by the Michigan Court of Appeals was unreliable. *See also*, *Gardner v. Ponte*, 817 F.2d 183, 189 (1st Cir. 1987) (failure of counsel to perfect petitioner's appeal from conviction in state trial court, though negligent, was not a basis for obtaining federal habeas corpus relief on claim of ineffective assistance, when state's rulings on petitioner's motion for postconviction relief granted petitioner an adequate substitute for direct appellate review); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1096 (E.D. Mich. 2004) (failure of appellate counsel to raise certain claims on appeal was not ineffective, but even it were, it did not cause petitioner harm because

14

his claims were eventually considered and rejected on valid state grounds by the same courts that would have heard his direct appeal); *Bair v. Phillips*, 106 F.Supp.2d 934, 943 (E.D. Mich. 2000) (counsel's telling petitioner he had no issues to appeal, resulting in petitioner losing his appeal as of right, did not cause any demonstrable harm because his claims were presented to the trial court in a post-conviction motion and were eventually considered and rejected on valid state grounds by the same courts that would have heard his direct appeal). *But see Benoit v. Bock*, 237 F.Supp.2d 804, 811 (E.D. Mich. 2003) (counsel was ineffective for permitting petitioner's appeal of right to be dismissed; prejudice not cured by subsequent appointment of counsel, motion for new trial, and denials of leave to appeal that decision).[10]

Here, Petitioner had the benefit of appointed appellate counsel, and his application for leave to appeal was reviewed on the merits by the Michigan Court of Appeals, the same court which would have evaluated his claims on an appeal of right, applying the same standards of review.  There is no basis to presume that such review was inadequate or unreliable.  The fact that one of the judges dissented from the denial of leave to appeal

---

[10]Although it is not clear from the opinion, it should be noted that the motion for new trial, because of the timing, would have been filed as a motion for relief from judgment under Mich. Ct. Rule 6.502.  In this type of motion, the grounds that can be presented are limited, and the burden is on the defendant to show good cause for failure to raise such grounds on appeal and actual prejudice from the error or irregularity.  See Mich. Ct. Rule 6.508.  Appeals are by application for leave to appeal, Mich. Ct. Rule 6.509(A), and the trial court's decision on the motion is reviewed for an abuse of discretion. *People v. Ulman*, 244 Mich.App. 500, 508, 625 N.W.2d 429 (2001).  The standard of review can be much more favorable on direct appeal, depending on the issue and whether or not it was preserved.  For instance, for a preserved claim of constitutional error, such as Petitioner's stop and search and seizure issue, the Michigan Court of Appeals must determine whether the people have established beyond a reasonable doubt that any error was harmless. *People v. Carines*, 460 Mich. 750, 774, 597 N.W.2d 130 (1999).

further supports the conclusion that the Court of Appeals made a considered evaluation of the merits of Petitioner's claims.

### 2. Ineffective assistance

Petitioner also challenges the voluntariness of his plea on ineffective assistance of counsel grounds.  As indicated above, in Petitioner's second motion for plea withdrawal, he claimed that his trial counsel had been ineffective for incorrectly advising him that he would have an appeal of right of his preserved claims.  The trial court made no findings and no specific ruling on the question, although obviously implicit in his denial of the motion for plea withdrawal was a rejection of the ineffective assistance of counsel claim.

When a state court decides a constitutional issue without discussion, the habeas court must conduct an independent review of the record and the applicable law. *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir.2003) (relying on *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)), *Harris v. Stovall*, 212 F.3d 940, 943 n.1 (6th Cir. 2000).  Ultimately, however, the inquiry remains whether the state court result is contrary to or an unreasonable application of established federal law.  *Id.* at 943.

The Supreme Court has adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, a defendant must show that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.   The reviewing court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.   Second, a defendant must show that counsel's deficient

16

performance prejudiced the defendant. *Id.* at 687.  In order to satisfy the "prejudice" requirement in a plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).

The trial attorney was never called to testify, so the record here is incomplete.  While petitioner requests an evidentiary hearing now, under the AEDPA, a defendant who failed to develop the factual basis of a claim in state court proceedings cannot obtain a hearing, unless he satisfies two statutory exceptions, neither of which is applicable here. 28 U.S.C. § 2254(e)(2).[11]  Moreover, this Court may hold a hearing only if the petitioner's factual allegations, if proven, would entitle him to relief. 28 U.S.C. § 2254(e)(2)(B).  See *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003); *Byrd* v. *Collins*, 209 F.3d 486, 550 (6th Cir. 2000).  That standard has not been met.

Defendants who plead guilty in Michigan have not had the right to appeal as of right since the Michigan Constitution was amended in 1994, to provide that "an appeal by an

---

[11]  28 U.S.C. § 2254(e) provides the following:
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>> (A) the claim relies on--
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

accused who pleads guilty or nolo contendere shall be by leave of the court," Mich. Const., Art. 1 § 20. This is fully reflected in Michigan's court rules governing guilty pleas. *See, e.g.,* Mich. Ct. Rules 6.301(C)(2), and 6.302(B)(4). A competent attorney practicing criminal law should have been aware of the appellate consequences of a guilty plea.

However, Petitioner's ineffective assistance claim fails in any event, because Petitioner has not sustained his burden of establishing prejudice. Despite his unsupported claims to the contrary, he has not proven that, but for counsel's allegedly erroneous advice, he would not have pled guilty. The evidence of his guilt, summarized above, was overwhelming, involved a very large amount of drugs, and included admissions as to repeated drug deliveries to Michigan. He faced a potential life sentence. He received substantial benefits in exchange for his plea. He was looking for a reason to withdraw the plea almost immediately, and before he even knew his appeal would be by leave only. As discussed above, the difference between an appeal by leave, and an appeal as of right, is not significant. Considering this, this Court does not find that the trial court decision, to deny plea withdrawal despite the claim of ineffective assistance of counsel, was contrary to or an unreasonable application of federal law.

### 2. The Missing Videotape

At the first motion to withdraw guilty plea, made just before sentencing, Petitioner also claimed that he pled guilty because the videotape recorded by the camera inside Officer Jones' patrol car had not been available for the retrial. He argued that the tape would show that the officer was lying, and also that he was acting out of his jurisdiction. Judge Brookover denied the motion, finding that these matters had been addressed before the plea, and did not cast doubt on the voluntariness of the plea.

18

In his petition, Petitioner again challenges his plea because the prosecutor failed to produce a copy of the videotape. This, Petitioner explains, led him to fear his attorney was not prepared for the retrial, which pressured him into pleading guilty. He argues that the sound on the tape would show that the officer had searched Petitioner's car after Petitioner admitted he had no driver's license and after Officer Jones ran a LIEN inquiry, but before Jones actually received the response.

The tape was played at Petitioner's trial, and, according to Petitioner, it was played without the sound. The record of the trial shows that neither counsel for Petitioner nor counsel for his codefendant objected to the tape being played, and they made no request that the sound portion, if in fact there is one, be played. They both stated that they had no objection when the tape was admitted into evidence as an exhibit. Officer Jones narrated as the videotape was played.[12]

There are serious shortcomings in the factual support for this issue. There is no claim, and no record, that Petitioner ever listened to the videotape. There is no record that Petitioner ever advised his two trial attorneys, including the one who conducted the suppression hearing, that the search preceded the LIEN results, and Officer Jones' testimony was to the contrary. There is no reason to conclude that the tape would not have been produced by the time the retrial was underway, nor that the parties could not have found an adequate and equitable substitute, such as a stipulation or a special instruction, if it was not produced. No demand for production of the tape was made post-conviction, so that a record could be made. While petitioner requests an evidentiary hearing now, he

---

[12]See 6/10/2002 Trial Transcript, pp 101-109.

failed to develop the factual basis of the claim in the state court proceedings and therefore cannot obtain a hearing here. 28 U.S.C. § 2254(e)(2).  Moreover, this Court may hold a hearing only if the petitioner's factual allegations, if proven, would entitle him to relief. 28 U.S.C. § 2254(e)(2)(B).  Petitioner has not made that showing.

Even if the sound portion of the tape would support a claim that the officer searched the car precipitously, or that he was outside of his jurisdiction, these circumstances go to the legality of the search, a question that had been resolved against Petitioner before trial and which would not have been before the jury had Petitioner proceeded with the retrial. Furthermore, even if Petitioner's fear of going to trial without the tape was logically sounder, this still would not show that the plea was involuntary.  A plea motivated by fear of the consequences of going to trial is not thereby involuntary.  See *Brady*, *supra.*  There, the Supreme Court held that a plea of guilty was not invalid merely because entered to avoid the possibility of a death penalty, under a statute later held unconstitutional.  The Court adopted the following standard:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) rev'd on confession of error on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).  Petitioner's fear of going to trial without the videotape, no more than Brady's fear of the death penalty, is not a factor that rendered his plea involuntary.

Given the above, this Court finds that the decision of trial court, finding that the plea

20

was voluntary, was not contrary to, nor an unreasonable application of, Supreme Court precedent.

### C.  Counsel's Failure to Challenge the Letter

At Petitioner's trial, the prosecutor introduced a letter that Petitioner wrote to his son from the Wayne County Jail in September of 2001.  A deputy testified that the Wayne County Sheriff's Department screens all incoming and outgoing mail, and that Petitioner's letter was intercepted.  In the letter, Petitioner describes to his son "the way the story goes...," reciting a version of events that would explain how Petitioner had no idea there were drugs in the car.[13]  In his petition, Petitioner claims, as he did in his application for leave to appeal to the Michigan Court of Appeals, that his attorney was ineffective for not moving to suppress the letter, since it was seized in violation of his Fourth Amendment rights.[14]

As indicated above, the Fourth Amendment claim is foreclosed. *Stone v. Powell, supra.*  However, in *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), the Supreme Court held that a claim of ineffective assistance of counsel can permissibly include a claim that trial counsel failed to litigate competently an issue under the Fourth Amendment.  To obtain habeas relief, the petitioner must also prove that his Fourth Amendment claim is meritorious.  The Supreme Court further explained that the Fourth and Sixth Amendment claims have "separate identities and reflect different

---

[13]See June 11, 2002 Trial Transcript, pp 61-67.

[14]This Court will assume that the issue as framed was preserved by the conditional plea, as understood by the parties, even though ineffective assistance was not specifically mentioned.

constitutional values," and therefore must be analyzed separately. *Id.*

Initially, Petitioner fails to prove that his Fourth Amendment claim is meritorious. In *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), the Supreme Court held that there was no violation of the Fourth Amendment when letters written by an inmate, read by jailers pursuant to jail practice, were introduced against him at trial. *Id.* at 21- 22.[15]  *See also*, *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir.1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir.1991) (prison officials do not violate the Constitution when they read inmates' outgoing letters, because of their reasonable concern for prison security and inmates' diminished expectations of privacy); *United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986) (prisoner's Fourth Amendment rights were not violated when prison official inspected and copied prisoner's outgoing mail).  Michigan courts have similarly held.  *See People v Paul Williams*, 118 Mich.App. 117, 121, 325 N.W.2d 4 (1982) (jail authorities have the general right to open and read a prisoner's mail, due to their legitimate interest in institutional security and internal order).

Petitioner also fails on his claim of ineffective assistance.  Petitioner must show both that his counsel's performance was deficient (i.e., that it "fell below an objective standard of reasonableness") and that he was prejudiced by his counsel's deficient performance. *Strickland v. Washington, supra*, 466 U.S. at 688-689.  Regarding the second prong,

---

[15] That the Fourth Amendment rights of prisoners are limited has been consistently recognized.  *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (inmate had no reasonable expectation of privacy in his prison cell entitling him to protection of Fourth Amendment).

22

Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Considering the above case law, there is not a reasonable probability that the letter would have been suppressed had counsel made the motion, and counsel was therefore not ineffective for failing to do so. *See Busby v. Dretke*, 359 F.3d. 708, 714 (5th Cir. 2004) (appellate counsel's decision not to appeal admissibility of petitioner's jailhouse letters was not ineffective, given the prevailing view that there is no constitutional violation).

### D. Imposition of Sentence

At Petitioner's second motion to withdraw guilty plea, he also argued that the sentencing judge had erred in departing below the mandatory minimum sentence for the drug charge without placing substantial and compelling reasons on the record, as required by Michigan law. Judge Hathaway held that any error in the procedure for departing downwards was harmless.

In his petition, Petitioner alleges, as he did in his application for leave to appeal in the Michigan Court of Appeals, that the trial court's failure to give substantial and compelling reasons for imposing a sentence below the presumptive mandatory minimum sentence denied him his constitutional right to due process.[16]

At the time of the offense, Mich. Comp. Laws 333.7401(2)(a)(2) (before its amendment by 2002 Public Act 665) provided that the penalty for possession with intent to deliver 225 grams or more, but less than 650 grams of cocaine, "was not less than 20

---

[16] The issue heading erroneously characterizes this as a departure from the guidelines issue, but this is clarified in the argument itself.

years nor more than 30 years."  A trial court could depart from the mandatory minimum term if it found on the record that substantial and compelling reasons existed to do so. MCL 333.7401(4).  The sentencing court was required to articulate the reasons why the factors it identified and relied upon collectively provided "substantial and compelling" reasons. *People v. Fields*, 448 Mich. 58, 67, 528 N.W.2d 176 (1995); *People v. Johnson (on remand)*, 223 Mich.App. 170, 173-174, 566 N.W.2d 28 (1997):

Aside from Petitioner having failed to show prejudice, *see Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed. 2d 353 (1993), this claimed ground for relief is not cognizable in a federal habeas corpus proceeding because it challenges the state court's interpretation and application of its sentencing laws. *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003) (unpublished opinion). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, *supra*, 502 U.S. at 67.


V. Conclusion

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.



s/ DENISE PAGE HOOD                        .
**DENISE PAGE HOOD**
UNITED STATES DISTRICT JUDGE

DATED:   August 25, 2005

24